## EDMUND MUNROE *versus* EPHRAIM C. GATES.

Where the proprietor of a mill, and of a definite proportion of the water power or flow of water in a stream, makes a change in a sluice way which occasions an increase of back water injurious to the mill of a neighboring owner, who is also part owner of the water power, the latter may maintain an action therefor.

But if the mill injured by the change is under lease, at the time of the injury complained of, and the rent not dependent on the result of the suit, only nominal damages will be awarded.

Where there were several mill privileges originally owned together, but afterwards, for a long series of years, occupied by different persons in severalty, and from time to time transferred from one to another by deed, levy or descent, the Court is authorized to infer an ancient partition amongst the several proprietors, and a division of the water privilege into proportionate parts, as it has been used and occupied, excepting so much as may have been parted with by common consent.

ON REPORT of the evidence by KENT, J.

This was an ACTION OF THE CASE, for alleged injuries to the plaintiff's mill, tried at October term, 1854; the verdict then rendered was afterwards set aside, and a new trial ordered. Writ dated Sept. 20, 1853.

It appeared by the testimony, that there were eight mill privileges owned by the original proprietors of the township of Calais, all on the upper mill dam, at Milltown, on the river St. Croix, and entitled to equal shares of the water power. In process of time, these fell into the hands of different owners, and, by three successive partitions, seven-sixteenths were set off to individual proprietors in severalty. It does not appear that the other nine-sixteenths were ever parted by any legal process; but it was in evidence that the plaintiff had occupied and taken the rents and profits of one of the mills, called the Columbus, since 1818. The defendant became the owner of the Franklin mill and privilege, in 1853, it having been assigned to E. H. Robbins, jr., by partition, in 1825, from whom, through intermediate conveyances, the defendant derived title. The Franklin mill was rebuilt in 1852–3, and enlarged in size and machinery, so as to require and use more

water, and its raceway was filled up some three feet. In 1852 and 1853, the Columbus mill was rented for $700 a year. The rent was not dependent on, or to be affected by the result of the present suit.

There was evidence from sundry witnesses, introduced by the plaintiff, tending to show that, up to the time when the defendant's mill was rebuilt, the Columbus was never troubled by back water, unless during a freshet, but since that time it had been seriously affected by back water; that the raceways of the two mills met at the foot of the Franklin, and that the meeting of the two currents caused back water to the Columbus; and that the Columbus sawed less lumber in 1853, in consequence of back water.

The defendant introduced testimony tending to show that the new raceway of the Franklin mill was as good in all respects, and as favorable for the Columbus mill, as the old one; and offered to prove that the wing dams on the English side occasioned back water to both the Franklin and Columbus mills. This testimony the Court excluded, and, under the instructions given by the presiding Judge, a verdict was returned for the plaintiff with nominal damages.

This verdict was set aside by the full Court, and a new trial granted, as reported in 42 Maine Reports, 178, the Court determining that the evidence excluded should have been admitted.

The case was tried anew at April term, 1860, KENT, J., presiding.

In addition to the testimony introduced at the former trial, the defendant called J. Y. Nash, who testified, among other things, that he was a millwright, and had made repairs on both the Franklin and Columbus mills; that the Franklin mill had never been troubled with back water until since the abutment was built on the English side in 1854, but had been since; that the Columbus had been obstructed by back water since the Franklin was rebuilt; and that he supposed the latter was partly caused by the mill venting more water into the raceway, from some of her buckets being broken.

The plaintiff called Oliver Dow, who testified that he was the partner of Nash, and had worked on both mills; that the Columbus was not troubled with back water until the Franklin was rebuilt in 1853; that one reason of the trouble was, that the Franklin vented so much water in the raceway of the Columbus, and another reason was, that they had set seven posts, thirteen inches square, in the centre of the Columbus raceway, causing the water to run to the right, instead of a direct course; that the water from the Columbus meets and clashes with the water from the Franklin; that he was at the mills the week before, and there was no back water from the abutment on the English side upon the apron of the Columbus.

It was agreed to submit the case, upon the evidence, so far as admissible, to the decision of the full Court, the Court to draw such inferences as a jury might, and to enter such judgment as the law requires, and, if for the plaintiff, to assess the damages.

The case was submitted without argument.

*Downes & Cooper*, for the plaintiff.

*T. J. D. Fuller*, for the defendant.

The opinion of the Court was drawn up by

RICE, J.—This case was before this Court on a former occasion. 42 Maine, 178.

The injuries of which the plaintiff complains are, diverting the flow of water from the flume of his mill, thereby diminishing his supply; and obstructing the raceway by which the water passes from his mill, thereby occasioning back water upon his wheels, and, by reason thereof, obstructing their operation.

These allegations are denied by the defendant. The principal part of the testimony, introduced at both trials, had reference to the back water upon the plaintiff's wheels.

On the former trial, the defendant offered to prove, that the back water of which the plaintiff complains, so far as any

Munroe *v.* Gates.

existed, was occasioned by the construction of the wing dam on the English side, as delineated on Hayden's plan. This testimony was excluded by the presiding Judge.

On that point, the Court remark—" In our view of the case, this testimony might have been both pertinent and important. If the evidence should fail to prove an unlawful obstruction in the raceway by the defendant, and it should appear that the water had been thrown back upon the plaintiff's wheels, to an extent greater than heretofore, it was important to determine whether that increase of back water was occasioned by the obstructions which the defendant had made, in the manner in which the water was discharged from his wheels, or by the wing dams on the English side. For this purpose, the testimony should have been admitted."

The excluded testimony in relation to the wing dams, above referred to, is now before us, together with all the testimony presented to the jury on the former trial; and the Court, by agreement of parties, are authorized to draw inferences as a jury might. From a careful examination and comparison of the new testimony with that of the former trial, we are satisfied that there has been, since the changes of which complaint is made, in the defendant's mill, a large and injurious increase of back water upon the wheels of the plaintiff's mill; that this back water has not been occasioned by the wing dams on the English side, but is the result of an unauthorized change in the sluice of the defendant's mill.

The parties agree that the water power, on the dam from which these mills severally draw water, was originally divided into eight privileges. The records in the case do not show a partition of the entire power among the several original proprietors or their representatives. But the evidence in the case does show that these several privileges have, for a very long period of years, been occupied and improved in severalty. As individual estates, they have been frequently transferred by deed and levy, and have descended to the heirs of deceased parties. The water power, that is, the flow of water in the stream, is of course incapable of practical divis-

Munroe *v.* Gates.

ion, like land, by metes and bounds. Each proprietor of a mill site may, however, become the owner of any given proportion of the whole power or flow of water.

The testimony authorized the inference, and we accordingly find, that, at some remote period of time, there has been a partition among the proprietors in severalty of the eight mill sites or privileges, as they have been heretofore used and occupied, and that each of these privileges is entitled to draw from the common head of water one eighth part thereof, except so much thereof as has been parted with by the concurrence of the proprietors, or by operation of law, for sluices for lumber over said dam, or other purposes.

The evidence also shows that, during the whole time of the alleged injury, the plaintiff's mill was under lease, and that the amount of the rent in no way depended upon the result of this suit, consequently the damages he will be entitled to recover can be nominal only.

The defendant's mill, the Franklin, occupying one of the eight privileges on the dam, is entitled to one-eighth of the flow of the water in the stream, with the exception already referred to. Whether this mill has drawn more than its just proportion, or whether its flume is now so constructed as unreasonably to interfere with the passage of water to the flume of the plaintiff's mill Columbus, the evidence does not distinctly show. We therefore make no decision upon that part of the case.

But, from the facts already found in relation to the back water, and the occasion thereof, under the agreement of the parties, a default must be entered and judgment rendered for the plaintiff for one dollar damages.

*Defendant defaulted.*

TENNEY, C. J., APPLETON, CUTTING, MAY and KENT, JJ., concurred.